IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joong Ko, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 21-cv-0011 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| K Stones, Inc., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendants Kyun S. Seok, Ann Seok, and K Stones, Inc., "operate a wholesale and retail beauty supply company located" in Oak Park, Illinois. Ans. ¶ 12, ECF No. 14. From 2012–18, plaintiff Joong Ko worked for defendants as a "general laborer including but not limited to sales, inventory, roof repair, building repair . . . , and speech writing [and] document preparation for defendant KYUN SEOK's candidacy for the South Korean parliament." Pl.'s Stmt. of Undisputed Material Facts ("SOF") ¶¶ 11, 12, 19, ECF No. 50. Before the court is Ko's motion for summary judgment on his claims under the federal Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. § 201 et seq., and the Illinois Minimum Wage Law[1] ("IMWL") 820 Ill. Comp. Stat. § 105/1 et seq., for unpaid overtime wages, liquidated damages, interest, and statutory costs and attorneys' fees.[2] ECF No. 48. Although defendants do not contest their liability, they argue that genuine disputes of material fact exist concerning Ko's calculation of damages and whether their failure to pay overtime wages was willful. *See* Resp. Mem. 2–9, ECF

---

1  Citations to the IMWL in this opinion refer to the version in effect in 2018, when the events of this case took place.

2  The parties do not discuss count V of the complaint, alleging a claim under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. § 115/1 et seq. Compl. 10–11.

No. 53. Because genuine fact issues exist concerning Ko's damages, the court denies his motion in part.

## I. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.' " *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)) (other citation omitted). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The underlying substantive law governs whether a factual dispute is material: 'irrelevant or unnecessary' factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169.[3]

---

3    In his response to defendants' Local Rule 56.1(b)(3) statement of additional undisputed material facts, Ko objects generally that defendants' fact statement should be stricken because making legal arguments in Local Rule 56.1 fact statements is inappropriate. ECF No. 57 at 1–2. Ko correctly states the rule, *e.g.*, *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382, n.2 (7th Cir. 2008), but ironically violates it by making this argument in a Local Rule 56.1(c)(2) response, which is not the right place for it. In the exercise of its discretion to enforce Local Rule 56.1, the court declines to strike either side's fact statements in their entirety, though both sides have violated provisions of Local Rule 56.1. However, defense counsel are cautioned that a response to a Local Rule 56.1(a)(2) statement of undisputed material facts must set forth the text of the
(continued on next page)

## II. Analysis

Both the FLSA and the IMWL require a covered employer to pay non-exempt employees an overtime rate of at least one and one-half times the employee's regular rate for hours worked in excess of 40 per workweek. *See* 29 U.S.C. § 207(a)(1) (West 2022); 820 Ill. Comp. Stat. § 105/4a(1). The FLSA's and IMWL's overtime provisions parallel each other, and, generally, "Illinois courts apply the same principles . . . to the state provision." *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010) (citing *Condo v. Sysco Corp.*, 1 F.3d

---

paragraph to which the nonmoving party is responding; this aids the court considerably in efficiently processing and resolving summary judgment motions.

Ko also raises several evidentiary objections to specific paragraphs of defendants' statement of additional facts. Resp. to SAF, *infra*, ¶¶ 1, 2, 4, 6–9. The court overrules Ko's objection to paragraph one because the court does not read the paragraph as asserting the legal conclusion that Ko was a salaried, exempt worker. Rather, the paragraph states defendants' erroneous subjective belief that Ko was exempt—a belief all parties agree was incorrect. *See* Resp. to SOF, *infra*, ¶ 11. The objection to paragraph two is overruled because Ko cites no evidentiary rule or legal rule in support of his objection. The court notes, however, that defendant Ann Seok testified in her capacity as a Fed. R. Civ. P. 30(b)(6) representative of defendant K Stones, Inc. *See* A. Seok Dep., *infra*, at 5. There is no need to resolve Ko's objection to paragraph four, concerning what other employees were told about when the workday started, given the genuine dispute, *see* ¶ 5, over what Ko was told about when to arrive for work.

Ko objects that paragraphs 6–9 contain hearsay and assume facts not in evidence. Ko's "assumes facts not in evidence" objections are nonsensical because such an objection concerns the form of a question posed at a deposition or trial, and paragraphs 6–9 rely on declarations in which no questions are posed. These paragraphs do not contain hearsay. In the declarations defendants cite, the declarants aver that employees' only responsibilities after store closure were closing down the register, that employees were out of the store within 15 minutes "with rare exceptions," that employees customarily took a one-hour lunch break, and that both declarants observed Ko taking lunch breaks. *See* SAF, *infra*, ¶¶ 6–9. Those averments do not qualify as hearsay because none contain an out of court statement. Fed. R. Evid. 801(c)(1). Rather, the declarants describe what they personally observed. Their declarations provide a basis for finding that the declarants had personal knowledge of those facts—both worked at defendants' store at the relevant times, one as a manager and one in a position similar to Ko's. *See* Park Decl. ¶¶ 3, 5, ECF No. 52-3; Yi Decl. ¶¶ 3, 5, ECF No. 52-4. Testimony of what a declarant personally observed is entirely proper, and indeed a declarant's personal knowledge is required by the summary judgment rule, Fed. R. Civ. P. 56(c)(1), and rules of evidence, Fed. R. Evid. 602. *See, e.g.*, *McKinney v. Chi. Transit Auth.*, 2022 WL 2257246, at *2 n.2 (N.D. Ill. June 23, 2022) *(citing Krnich v. FPC Corp.*, 2021 WL 3930306, at *3 (N.D. Ill. Sept. 2, 2021)); *Pro. Serv. Indus., Inc. v. Dynamic Dev. Co., LLC*, 2017 WL 6039870, at *3 (N.D. Ill. Dec. 6, 2017), *vacated on other grounds,* 2018 WL 3389705 (N.D. Ill. July 12, 2018).

3

599, 601 n.3 (7th Cir. 1993) (other citation omitted)); *but see Samano v. Temple of Kriya*, 2020 IL App (1st) 190699, ¶¶ 47–48, *reh'g denied* (Oct. 16, 2020), *appeal denied,* 163 N.E.3d 727 (Ill. 2021) (explaining that in certain circumstances, not present here, the IMWL and FLSA are not coterminous). "The employee bears the burden of proving that she performed overtime work for which she was not properly compensated." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011) (citing *Anderson v. Mt. Clemens*, 328 U.S. 680, 686–87 (1946)).

Here, defendants admitted in their answer to the complaint, and so it is undisputed at summary judgment, that they were Ko's employers for purposes of the FLSA and IMWL and that Ko "performed non-exempt work for defendants from March of 2012 to July, 2018." SOF ¶¶ 6–13. Defendants also do not dispute that Ko "consistently worked over 40 hours per week while employed by Defendants at the direction of the defendants" and that "defendants did not pay overtime wages" to Ko during the three years preceding the filing of this lawsuit. SOF ¶¶ 15, 16 (citations omitted). As defendants appear to concede,[4] these undisputed facts establish their liability for violating the FLSA's and IMWL's overtime provisions. *See, e.g.*, *Kellar*, 664 F.3d at 176–77; *Berger v. Perry's Steakhouse of Ill., LLC*, 430 F. Supp. 3d 397, 406 (N.D. Ill. 2019). The only contested issues concern Ko's damages.

---

4  Ko reads defendants' response brief as possibly containing the argument that he was a salaried worker who is exempt from the FLSA's and IMWL's overtime requirements. Reply, *infra*, at 7. The court does not read defendants' response memorandum or Local Rule 56.1 submissions as asserting such an argument. Rather, as discussed below, defendants argue under the heading of willfulness that they mistakenly believed that Ko was exempt, but they make no argument that their mistaken belief was legally correct. *See* Resp. Mem. 1, 5 (arguing, for example, that "[w]hile Defendants may have miscategorized Plaintiff for exempt/non-exempt purposes, they at all times acted in good faith . . . . Given Defendants' good faith belief, a question of fact exists as to whether Defendants' violation of FLSA was "willful" and therefore subject to a three year statute of limitations . . . .").

4

### A. *Regular Rate of Pay for Straight Time: $12.50/Hour.*

"The employee's regular rate of pay is a factual matter." *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 680 (7th Cir. 2010) (citing *Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424–25 (1945)). The factual issue "turns on what the parties agreed the employee would be paid for the hours he actually worked (so long as the rate is not lower than the minimum wage)." *Id.* The only evidence relevant to this question either party cites is Ko's uncontroverted sworn declaration that the agreed hourly rate for the first 40 hours he worked was $12.50. *See* SOF ¶ 21; *see also* Ko Decl. ¶¶ 5, 9; Resp. to SOF ¶ 21, ECF No. 54. With the exception of two weeks in July 2018, it is undisputed that defendants paid Ko $600 per week—and no more than $650 in the two disputed weeks. *See* SOF ¶ 20; Resp. to Defs.' Stmt. of Add'l Undisputed Material Facts ("Resp. to SAF") ¶ 12, ECF No. 57.

Accordingly, it is undisputed that Ko's base hourly rate for the first 40 hours of straight time was $12.50.[5] Multiplying $12.50 by 40 yields $500. So, the amount defendants paid Ko in excess of $500 each week must be credited against the overtime Ko was owed for that week.

### B. *Number of Overtime Hours Worked*

The FLSA requires covered employers to keep records of "wages, hours, and other conditions and practices of employment," as prescribed by regulation. 29 U.S.C. § 211(c) (West 2022). Among other things, employers must record "[h]ours worked each workday and

---

5  Defendants contend that the Seventh Circuit's decision in *Urnikis-Negro* is "instructive." Resp. Mem. 8. In *Urnikis-Negro*, the Seventh Circuit adopted the fluctuating workweek methodology for computing the overtime pay rate for salaried employees who are misclassified as exempt from overtime requirements. 616 F.3d at 680–83. Under this method, an employee's base rate is determined by dividing the number of hours the employee actually worked each week by the employee's weekly salary, rather than by dividing the salary by 40. *See id.* at 681–82 (quoting *Warren-Bradshaw Drilling Co. v. Hall*, 124 F.2d 42, 44 (5th Cir. 1941)). Why defendants think *Urnikis-Negro* is instructive is unclear, for they do not argue that the fluctuating workweek method should be used here. Resp. Mem. 8. Rather, defendants urge the court to use $12.50 as Ko's base hourly rate. *Id.*

total hours worked each workweek." 29 C.F.R. § 516.2(a)(7) (West 2018). Ordinarily, the employer's overtime records can be used to determine the amount of overtime owed if an FLSA violation has occurred. But the burden-shifting framework of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), applies "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes." *See also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016). Under this framework, the employee must first establish "that he has in fact performed work for which he was improperly compensated" and produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. The burden then shifts to the employer to produce "evidence of the precise amount of work performed or . . . evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Tyson Foods*, 577 U.S. at 456 (quoting *Anderson*, 328 U.S. at 687–88).

      As discussed above, there is no dispute that Ko performed overtime labor for which he was not properly compensated. Defendants do not discuss the FLSA's recordkeeping requirements, but they have submitted a notebook allegedly kept by defendant Ann Seok with certain employee payroll information. *See* SAF ¶ 11, ECF No. 52; Seok notebook, ECF No. 52-2. Defendants contend that defendant Ann Seok recorded each employee's name, date, and amount the employee was paid. SAF ¶ 11. Seen favorably to defendants, the Seok notebook lists, albeit inconsistently, the dates and amounts paid to Ko, but not the number of hours Ko actually worked each day. *See* Seok notebook 4–43. The following entry for the week of January 1–7, 2017, is typical: "MR [Ko] 5 days ×120 = 600." *Id*. at 4.

      Ko cites evidence raising a question concerning the admissibility of the notations in the Seok notebook. *See* Resp. to SAF ¶ 11. Specifically, defendant Ann Seok testified at her

6

deposition that she did not recognize the handwriting or know who made each notation. *See* A. Seok Dep. 90–105, ECF No. 50-3, *cited in* Resp. to SAF ¶ 11. The court finds this dispute to be immaterial because, regardless of whether it is admissible, the Seok notebook does not purport to record the number of hours Ko actually worked each day. *See* Seok notebook 4–43. Because the Seok notebook does not record all hours Ko worked, the *Anderson* burden-shifting framework applies. *See Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016). "[W]hen employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the remedial nature of the FLSA and the great public policy which it embodies militate against making the burden of proving uncompensated work an impossible hurdle for the employee." *Tyson Foods*, 577 U.S. at 456 (quotations and citations omitted).

An employee may rely on recollections of hours worked at the first *Anderson* step, but " '[b]are allegations' and 'vague undocumented estimates' do not survive summary judgment." *Brown v. DS Servs. of Am., Inc.*, 246 F. Supp. 3d 1206, 1220 (N.D. Ill. 2017) (citing *Brand v. Comcast Corp.*, 135 F.Supp.3d 713, 742 (N.D. Ill. 2015) and *Golden v. World Sec. Agency, Inc.*, 884 F.Supp.2d 675, 700–01 (N.D. Ill. 2012)). Ko has submitted two of his own declarations, the declaration of one of his attorneys, and a 2018 calendar on which he avers he recorded the hours he worked each day. *See* SOF ¶ 22 (citing Ko Decl. and Ko calendar, ECF No. 50-2). Handwritten notations on the calendar specify the time at which Ko started and finished work each day.

An employee's calendar or journal of hours actually worked can, in appropriate circumstances, provide sufficient corroboration for an employee's just and reasonable estimate of his overtime hours. *See Cunningham v. Gibson Elec. Co.*, 43 F. Supp. 2d 965, 970–71, 978

(N.D. Ill. 1999). The burden therefore shifts to defendants to create a fact issue by pointing to evidence of the specific hours Ko worked or negating the reasonableness of the inferences to be drawn from Ko's calendar. *See Anderson*, 328 U.S. at 687–88. Defendants identify four such issues.

First, there is a question concerning the accuracy of Ko's overall hours computation prepared by counsel. *See* SAF ¶ 10 (Ko's testimony that he did not know how the estimate was prepared). Ko's attorney avers that he calculated the overtime hours Ko is owed by reviewing the calendar and adding up the number of hours Ko worked each week. Shim Decl. ¶ 4, ECF No. 50-4. Counsel prepared a spreadsheet with weekly calculations of the total number of hours Ko worked and the overtime pay he is allegedly owed. *See id.* ¶ 2; Spreadsheet, ECF No. 50-5.

The court spot-checked counsel's spreadsheet by reviewing the calendar, summing the number of hours worked in randomly selected weeks, and comparing the results to counsel's computations. Allowing for differing interpretations of Ko's handwriting and rounding errors, the discrepancies summarized in the following chart cannot be fully explained on the present record and therefore prevent entry of summary judgment:

| Week of Sunday | Hours Worked (calculated by the court based on Ko calendar) | Hours Worked (from Spreadsheet) |
|---|---|---|
| 1/14/2018[6] | 52 hours and 50 minutes | 55 |
| 2/18/2018 | 54 hours and 35 minutes | 55 |
| 3/11/2018 | 53 hours and 55 minutes | 53.5 |
| 4/15/2018 | 53 hours and 35 minutes | 53.5 |
| 5/6/2018 | 54 hours and 20 minutes | 54.5 |
| 6/17/2018 | 53 hours and 25 minutes | 53 |
| 7/8/2018 | 53 hours and 40 minutes | 53.5 |

---

6   The entry for Monday, January 15, 2018, includes both the English word "off," which appears to be how Ko indicated his days off, as well as some writing in a foreign language and "12 – 2." Ko calendar 6. These two hours are not included in the court's computation.

The second fact issue concerns lunch breaks. Ko deducts no time for lunch or other breaks from his computations of his overtime hours. *See* Spreadsheet. Defendants point to sworn declarations from two of Ko's former co-workers, Seung Woo Park and Hui Chul Yi, stating that employees customarily took one-hour lunch breaks and that they "recall observing" Ko taking a one-hour lunch break except "in some unique circumstance." Park Decl. ¶¶ 10–12; Yi Decl. ¶¶ 10–12; SAF ¶¶ 8–9. Ko states in his declaration that the individual defendants told him that there was no set lunch time and to eat whenever he had time during the day, but he stops short of an averment that he did not take lunch breaks. *See* Resp. to SAF ¶ 8 (citing Ko Supp. Decl. ¶ 6, ECF No. 57-3). Park also testified that Ko, Yi, and Park did not have "lunch together." *Id.* ¶ 9. Seen favorably to defendants, a jury could find that testimony to be true and still believe Yi and Park's averments that they "observ[ed]" Ko taking lunch breaks without them. Park Decl. ¶ 12; Yi Decl. ¶ 12. Thus, a fact issue exists concerning whether, and if so how frequently, Ko took lunch breaks for which he should not receive overtime pay. *See Melton*, 838 F.3d at 818–19; *Brown*, 246 F. Supp. 3d at 1222.

Third, a genuine factual dispute exists over whether Ko was paid $650 for certain weeks. *See* Resp. to SAF ¶ 12. Ko avers that defendants paid him $600 per week in cash regardless of how many hours he worked. Ko Decl. ¶ 5; Ko Supp. Decl. ¶ 8. Defendants' evidence and argument is not entirely consistent as to the dates Ko was allegedly paid $650. In their Local Rule 56.1(b)(3) statement of additional facts, defendants assert that Ko was paid $650 for the week of July 14–21, 2018. SAF ¶ 12; *see also* Resp. to SOF ¶ 20. In her declaration, defendant Ann Seok avers, "For the week of July 11, 2018 to July 21, 2018, Ko was paid $650." A. Seok Decl. ¶ 8, ECF No. 52-1; *see also* SAF ¶ 13. Because the "week" of July 11–21 covers more than seven days, a jury could find that Ko received either one or two $650 payments in

9

July 2018. Furthermore, notations in the Seok notebook, some of which are not cited by the parties, corresponding to the weeks of April 15–21, July 8–14, and July 15–21, 2018, could be read as meaning that Ko was paid an extra fifty dollars that week. *See* Seok notebook 37, 42, 43. The court need not sort out this evidence to find a that a genuine fact dispute exists. It will be for the fact finder to determine whether Ko was paid $650 for any or all of these weeks.

Fourth and finally, while they do not spell this out in their response memorandum, defendants appear to be arguing that no reasonable jury could hold them liable for overtime for hours in excess of 30 minutes before the store's opening time and 15 minutes after it. Defendants point to evidence that the store hours were Monday–Thursday from 9:00 a.m.–7:00 p.m.; Friday–Saturday from 9:00 a.m.–7:30 p.m.; and Sunday from 10:00 a.m.–5:00 p.m., although Ko did not work on Sundays. *See* Resp. to SAF ¶ 3 (evidentiary material cited by Ko does not create a genuine dispute). Defendants also point to disputed evidence that they told employees to arrive at work no more than 30 minutes before the store opened; Ko testified that he was to arrive at least 30 minutes before opening. *See* Resp. to SAF ¶¶ 4–5 (citing Ko Supp. Decl. ¶ 5). And it is undisputed that employees were out of the store within 15 minutes of closing time. Resp. to SAF ¶ 7 (deemed undisputed because no evidence cited in response).

Multiple genuine fact issues exist here. In the first place, what Ko was told about the time at which he should arrive is genuinely disputed. Resp. to SAF ¶ 5. Defendants' argument also ignores the undisputed fact that Ko had additional duties–writing speeches and repairing the roof and building–in addition to his duties in defendants' store. *See* Resp. to SOF ¶ 12. A reasonable jury could therefore attribute Ko's overtime before and after the store's regularly scheduled hours to his additional duties. Depending on how a jury resolves these disputes, it

would be reasonable to award Ko overtime for hours worked outside the 15/30-minute window defendants propose.

Additionally, defendants have presented no evidence that they were unaware that Ko in fact did show up more than 30 minutes before the store opened and performed work for them. The FLSA's expansive definition of "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g) (West 2022). Ko has the burden to show that defendants had "actual or constructive knowledge of [his] overtime work." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing *Reich v. Dep't of Conservation & Nat. Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994)). Defendants do not raise a challenge regarding the actual or constructive knowledge element of Ko's claims. Should this issue be raised in the future, "an employer is not relieved of the duty to inquire into the conditions prevailing in his business because the extent of the business may preclude his personal supervision." *Kellar*, 664 F.3d at 178 (quoting *Reich*, 28 F.3d at 1083). Thus, defendants cannot escape liability for paying Ko's overtime wages if they knew or should have known that he was working more than 30 minutes before the store opened and more than 15 minutes after it closed. *See id.* at 177–78.

### C. Willfulness/Statute of Limitations

Ko commenced this lawsuit by filing his complaint on January 4, 2021. ECF No. 1. He seeks compensation for hours worked three years before that date. The FLSA sets a two-year statute of limitations for wage and hour claims "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a) (West 2022). The IMWL, by contrast, has a three-year statute of limitations for all claims. *See* 820 Ill. Comp. Stat. § 105/12(a); *Wilkins v. Just Energy Grp., Inc.*, 171 F. Supp. 3d 798, 809 (N.D. Ill. 2016); *Reynoso v. Motel LLC*, 71 F. Supp. 3d 792, 799 (N.D. Ill. 2014). No party argues that Ko's IMWL claims are time-barred.

In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34 (1988), the Supreme Court construed the word "willful" in § 255(a) of the FLSA to require a showing by the employer that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133. Defendants cite a non-binding case for the proposition that whether an employer's violation is willful is a question of fact generally inappropriate for resolution at summary judgment. Resp. Mem. 3 (citing *Ogawa v. Stein & Co.*, 1994 WL 714600, at *2 (N.D. Ill. Dec. 20, 1994)). *Ogawa* stands for a different proposition, with which this court does not disagree: "[W]hether there was a willful violation is a question of fact to be determined from the evidence." 1994 WL 714600, at *2 (citing *Gamarot v. DeBush*, 1990 WL 304251, at *3 (N.D. Ill. May 15, 1990)). Like any question of fact, however, willfulness may be resolved at summary judgment, either for or against the employer, if there is no genuine dispute as to any material fact. *E.g.*, *Howard v. City of Springfield*, 274 F.3d 1141, 1144 (7th Cir. 2001) (affirming entry of summary judgment on willfulness); *see also Divine v. Volunteers of Am. of Ill.*, 319 F. Supp. 3d 994, 1001 (N.D. Ill. 2018).

The parties disagree about who has the burden of proof to demonstrate a willful violation of the FLSA. Ko quotes one word from *Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995), citing the case for the proposition that "defendants have a 'substantial' burden in attempting to demonstrate that its actions were in good faith and had reasonable grounds for believing that they were not violating the FLSA." Reply 5. Ko conflates the rules for awarding liquidated damages under the FLSA, which is what is discussed in the passage he quotes, and the rule for establishing a willful violation triggering the FLSA's three-year limitations period. Regarding willfulness and the statute of limitations, *Bankston* states: "[P]laintiffs bore the burden of showing that the defendants' conduct was willful for purposes of the statute of limitations."

12

*Bankston*, 60 F.3d at 1253 (citing *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 308 (7th Cir. 1986)). Many district court decisions are in accord. *See, e.g.*, *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1134 (N.D. Ill. 2017) (ultimately citing *Bankston*); *Young Chul Kim v. Cap. Dental Tech. Lab'y, Inc.*, 279 F. Supp. 3d 765, 770 n.4 (N.D. Ill. 2017). Under the Seventh Circuit's binding decision in *Bankston*, Ko bears the burden to prove a willful FLSA violation such that the three-year statute of limitations applies.

The parties have made an exceedingly thin record on defendants' willfulness. Ko relies on the following facts, nearly all of which are undisputed: (1) defendants knew that hourly employees had to be paid overtime wages; (2) defendants posted a public notice informing employees of their right to receive overtime wages; (3) defendants did not pay Ko overtime wages; (4) "Defendants never kept any records of the number of hours worked by the plaintiff during the entire period [of] plaintiff's employment;" (5) defendants did not report their cash payments to employees to the government and did not make the required withholdings or deposits; and (6) defendants kept inadequate records of their employee's wages. *See* Resp. to SOF ¶¶ 27–38; Mem. Supp. Mot. Summ. J. 9, ECF No. 49; Reply 3–5. Defendants contest the final proposition in part based on the existence of the Seok notebook, the contents of which are genuinely disputed. *See* Resp. to SOF ¶ 32.

It is undisputed that Ko was not exempt from the FLSA's overtime requirements. Resp. to SOF ¶ 11. But defendants submit evidence from which a reasonable jury could find that they believed in good faith that they were not required to pay Ko overtime. *See* Resp. to SOF ¶ 27. Specifically, defendant Ann Seok testified at her deposition and averred in her declaration that she believed that only hourly employees were entitled to receive overtime pay and that salaried, managerial employees were exempt. *See* A. Seok Dep. 71, 89; A. Seok Decl. ¶ 4. She does not

13

state expressly that she believed Ko to be a salaried, managerial employee, but that is a reasonable inference in defendants' favor.

Ko argues strenuously that "Defendants in the instant case have not presented one scintilla of evidence that they took any affirmative action to ascertain the Act's requirements." Reply 6. But, as discussed above, Ko bears the burden to establish a willful violation of the FLSA, so he must, but has not, come forward with evidence showing a lack of diligence on defendants' part to ascertain the FLSA's applicability. Indeed, because he will bear the burden of proof on this issue at trial, to obtain summary judgment Ko "must show that the evidence . . . is so one-sided no reasonable jury could find for" defendants on willfulness. *Branham v. Snow*, 392 F.3d 896, 907 (7th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). Ko has not carried this burden. True, a jury disposed to view the evidence favorably to Ko could find reckless disregard based on defendants' awareness of the FLSA's general applicability, their admitted violations, their knowledge of the FLSA's potential applicability to Ko, and, with an inference favorable to Ko, their failure to take reasonable steps to determine whether he was exempt. *See Bankston*, 60 F.3d at 1253–54 (affirming jury verdict). But at summary judgment, the court must view the evidence in the light most favorable to defendants, not Ko. Seen in this light, the evidence to which Ko points of defendants' knowledge of the FLSA's general applicability leaves a genuine fact question as to whether defendants knew that Ko had to be paid overtime or acted with reckless disregard of that fact. *See Howard*, 274 F.3d at 1144; *Bankston*, 60 F.3d at 1253–54 (similar question resolved by a jury rather than at summary judgment).

### III. Conclusion

For the reasons stated, plaintiff Joong Ko's motion for summary judgment is granted in part and denied in part. The court grants the motion as to defendants' liability for FLSA and

IMWL violations but denies the motion as to damages because genuine material factual disputes exist regarding Ko's damages.

Dated: July 1, 2022                          /s/
                                                               Joan B. Gottschall
                                                               United States District Judge